**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-02203-LTB

NICHOLAS E. DURAN,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, J.

       Plaintiff, Nicholas E. Duran, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying his application for Social Security Disability benefits and Supplemental Security Income benefits. Following a March 18, 2008, hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on April 26, 2008. The Appeals Council determined there was no basis for changing the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted his administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I REVERSE and REMAND with instructions to award full benefits beginning June 18, 2001—Plaintiff's onset date and the last date he engaged in substantial gainful activity.

**I.  BACKGROUND**

Plaintiff applied for Social Security Disability benefits and Supplemental Security Income benefits on January 22, 2002. [Administrative Record "AR" 120]. Plaintiff's claim was initially denied on October 7, 2003 [AR 77], but the Appeals Council vacated the denial and remanded the case to the ALJ to further develop the record. [AR 104–06]. A second hearing was held and a new decision, also unfavorable, was issued on July 15, 2005. [AR 24]. Plaintiff appealed to the district court on August 4, 2006. *See Duran v. Astrue*, Case No. 06-cv-01532-MSK. Judge Krieger reversed and remanded with additional instructions. [AR 900]. A third hearing on Plaintiff's claim was held on March 18, 2008. Following the hearing, the ALJ issued an unfavorable decision on April 26, 2008. [AR 842]. Plaintiff now appeals from the April 26, 2008, decision.

At Plaintiff's 2003 hearing, a vocational expert ("VE") testified that a person with Plaintiff's mental residual functional capacity ("RFC")—which the ALJ determined to be a limitation that Plaintiff "not work in jobs having production quotas" and work in jobs requiring claimant to "understand, remember and carry out only simple instructions"—could perform the jobs of sales attendant and storage facility rental clerk. The ALJ relied on this 2003 testimony in denying Plaintiff's application for benefits on July 15, 2005. [AR 37]. No additional vocational expert testimony was taken at the 2005 hearing.

As noted by Judge Krieger in her 2007 Order, the *Dictionary of Occupational Titles* ("DOT") describes the jobs of sales attendant and storage facility rental clerk as requiring a reasoning level of three. The DOT describes level three reasoning as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized

situations." *See Dictionary of Occupational Titles*, App'x C (4th ed. 1991).  The Tenth Circuit holds that a job requiring level three reasoning is incompatible with a limitation to "simple and routine work tasks."  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Accordingly, Judge Krieger held: "this court, consistent with the reasoning and the practice in *Hackett*, is compelled to reverse and remand for a determination of the limited issue of discrepancy between the reasoning requirement for the jobs as specified in the *Dictionary of Occupational Titles* and the RFC."  [AR 884].  Judge Krieger further instructed the ALJ to determine the number of jobs available to Plaintiff in light of Plaintiff's mental residual functional capacity, and whether the number of such jobs was significant.  [AR 900].  Judge Krieger otherwise affirmed the July 15, 2005, Order.

A third hearing on Plaintiff's claim was held on March 18, 2008.  Following the hearing, the ALJ issued an unfavorable decision on April 26, 2008.  [AR 842].  The ALJ denied Plaintiff's request for a *de novo* hearing on the issue of Plaintiff's residual functional capacity—which Plaintiff requested in light of additional evidence indicating a worsening of Plaintiff's medical condition since the 2005 hearing.  [AR 846].  Accordingly, the ALJ considered only the issue noted by Judge Krieger in her order of remand: namely, whether Plaintiff—who could "not work in jobs having production quotas" and could only work in jobs requiring him to "understand, remember and carry out only simple instructions"—would be able to perform jobs that exist in significant numbers.

The ALJ determined Plaintiff could perform such jobs.  [AR 859].  In reaching his conclusion, the ALJ initially "respectfully disagree[d]" with Judge Krieger's holding that a discrepancy existed between the level three reasoning requirement for the jobs of sales attendant

and storage facility rental clerk—as specified in the DOT—and Plaintiff's mental RFC. [AR 859].  The ALJ "believe[d] . . . the applied reasoning of *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), to this case to be misplaced" based upon vocational expert testimony taken at the March 18, 2008, hearing. [AR 859].  The ALJ went on to conclude that—even if Judge Krieger was correct in holding that a limitation to "simple instructions" was inconsistent with a level three reasoning requirement—there would still be a significant number of jobs Plaintiff could perform. [AR 861].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse. *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

## III.  DISCUSSION

Plaintiff raises three issues on appeal from the April 26, 2008, decision: (1) the ALJ erred by rejecting Judge Krieger's holding that a discrepancy existed between a limitation to simple instructions and a level three reasoning requirement; (2) the ALJ erred by finding alternative jobs existed in significant numbers that required Plaintiff to follow only simple instructions; and (3) the ALJ erred by failing to allow Plaintiff to further develop the record in light of additional evidence indicating a worsening of Plaintiff's medical condition since the 2005 hearing.

### A.  Discrepancy between Plaintiff's Mental RFC and Level Three Reasoning

In *Hackett*, the Tenth Circuit held that when a claimant retains the mental RFC to perform only "simple and routine work tasks"—and the ALJ finds a claimant not disabled at step five based on a vocational expert's testimony that the claimant is able to perform jobs with a reasoning level of three—a finding that the claimant was not disabled at step five is not based upon substantial evidence.  *See Hackett*, 395 F.3d at 1176.  Judge Krieger found—in light of the Commissioner's belated concession that the facts in Plaintiff's case were the same as those before the Tenth Circuit in *Hackett*—that the reasoning of *Hackett* both applied and mandated reversal.  [AR 884, 901].  On remand, the ALJ was instructed to reconcile whether a person with Plaintiff's mental RFC could perform the jobs of sales attendant and storage facility rental clerk in light of the description of these jobs as requiring level three reasoning.  [AR 883–84, 900]. The ALJ's failure to follow Judge Krieger's instructions was error.

Under Tenth Circuit precedent and Social Security regulations, the requirements of a given job may be subject to clarification by VE testimony, and the ALJ may depart from the DOT guidelines describing the job so long as the departure is based on a vocational expert's experience with how a job is performed in the "real world."  *See Hackett*, 395 F.3d at 1175–76;

5

Social Security Ruling 00-4p, 2000 WL 1898704, at *3.  Regulatory definitions, however—being legal, rather than factual, in nature—are not subject to such modification.  *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (noting that—while VE testimony may justify a departure from the occupational *requirements* described in the DOT—the regulatory *definitions* are controlling).  This includes the definition of level three reasoning as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations." *See Dictionary of Occupational Titles*, App'x C.

The VE, however, provided no testimony distinguishing the "real world" requirements for the jobs of sales attendant and storage facility rental clerk from the requirements described in the DOT.  Instead, the VE argued that the definitions in the DOT—and as expounded in *Hackett*—were inaccurate.  [AR 969–70].  The VE testified his conclusion was "not something that's really published or identified any other way other than based upon [his] experience and background."  [AR 970].  Such testimony is not substantial evidence under Social Security Ruling 00-4p, which explicitly states: "SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions."  2000 WL 1898704, at *3.  Even if reliable, such unsupported testimony forms an insufficient basis to challenge *Hackett*—itself an opinion based on the regulatory definitions provided in the DOT.  *See Hackett*, 395 F.3d at 1175.

When "respectfully disagreeing" with both Judge Krieger and the Tenth Circuit's ruling in *Hackett*, the ALJ similarly provided no relevant case law or other authority supporting his

6

conclusions. Instead, the ALJ relied on an unpublished case, *Mondragon v. Barnhart*, No. 04-cv-01631-PSF (D. Colo. Dec. 29, 2005), that not only has no precedential value, but also—as a district court case—could not be followed by the ALJ to the extent it disagreed with *Hackett*—a published case from the Tenth Circuit. [AR 860]. Even if such a case could trump the Tenth Circuit's *Hackett* ruling, a review of *Mondragon*—somewhat unsurprisingly—reveals no discussion of *Hackett* at all, leading the Court to conclude the ALJ's observation—"that the reasoning in that [*Hackett*] decision has been similarly questioned by the District Court itself"—to be both irrelevant and inaccurate. Accordingly, the ALJ's reliance on *Mondragon* and the VE's testimony to justify a departure from Judge Krieger's order on remand—and the Tenth Circuit's instruction in *Hackett*—shows the April 26, 2008, decision was not based upon substantial evidence and the correct legal standards. *See Miller v. Barnhart*, 175 F. App'x 952, 956 n.3 (10th Cir. 2006) (noting an administrative agency is required on remand to conform its further proceedings to the judicial decisions above).

### B.  Existence of Alternative Jobs

The ALJ made additional, or alternative, findings that—even if Plaintiff were limited to reasoning level one work—Plaintiff could perform the jobs of air purifier servicer, maid, and flower picker. [AR 861]. The DOT description of the first of these jobs, air purifier servicer, requires that the employee drive a delivery truck—a requirement precluded by the ALJ's finding that Plaintiff "should avoid . . . the operation of motor vehicles." [AR 853]. No explanation for this discrepancy was elicited from the vocational expert, nor did the ALJ discuss it in his decision. Accordingly, the ALJ's finding that Plaintiff could perform the job of air purifier servicer was not based upon substantial evidence and the correct legal standards. *See Haddock*

7

*v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (holding "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point").

Turning to the job of maid, the VE initially testified that a maid would not be subject to any production quotas—one of the limitations applied by the ALJ when determining Plaintiff's RFC. [AR 992–93]. The VE defined "production quota" as: "A production quota is defined by most vocational experts as so many woodchips or keystrokes per minute. For instance in a factory assembly line type of setting you may have to do so many objects per minute or hour, or you may have to keep up with the line as it's moving down through. In terms of clerical type positions, like a transcriber for a doctor, there are—they count the keystrokes or the words per hour that they have to do. That is a production quota." [AR 994]. Upon additional examination, the VE testified that a maid would be required to clean "a certain number of rooms" per day or hour. [AR 994–95]. By way of example, the VE noted that Holiday Inn required maids to clean one room every twenty minutes. [AR 995]. Neither the VE nor the ALJ explained how the job of maid—which, according to the VE's testimony, required the cleaning of a certain number of rooms per day or hour—would not be considered a job that required a "production quota" in light of the definition of a "production quota" as the completion of a certain number of tasks in a certain amount of time. The ALJ's failure to reconcile this internal inconsistency shows the ALJ's finding that Plaintiff could perform the job of maid was not based upon substantial evidence and the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1025–26 (10th

Cir. 1996).

Excluding the jobs of air purifier and maid, the only job remaining is flower picker, which the VE testified exists in quantities of 36,000 in the nation and 500 in the state of Colorado. [AR 976]. Under Tenth Circuit precedent established in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), where the number of available jobs is "small enough to put the issue in a gray area requiring the ALJ to address it"—a number *Trimiar* found to be 650 to 900 jobs statewide—the ALJ must apply several factors before determining whether the number of available jobs is significant. *See Allen v. Barnhart*, 357 F.3d 1140, 1144–45 (10th Cir. 2004); *Trimiar*, 966 F.2d at 1329–30. These factors include: the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *See Trimiar*, 966 F.2d at 1330 (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). The ALJ should also consider whether the claimant can hold whatever job he finds for a significant amount of time. *See Winfrey*, 92 F.3d at 1025–26.

While 500 jobs statewide can, in certain circumstances, be sufficient to show jobs existed in a significant number, such a determination cannot be made without considering all of the relevant factors. *See Trimiar*, 966 F.2d at 1330. The ALJ, however, did not apply the *Trimiar* factors to the job of flower picker—nor did he otherwise make a finding that the job of flower picker exists in significant numbers under 42 U.S.C. § 423(d)(2)(A)—instead ruling: "an individual with such limitations and claimant's same vocational factors would still be able to perform the work of *a maid and a flower picker*, occupations *which combine to exist* in significant numbers" (emphasis added). [AR 861]. Accordingly, reversal of the ALJ's

9

determination at step five is required.  *See Allen*, 357 F.3d at 1144–45.

### C.  Failure to Develop the Record in Light of New Evidence

Between the 2005 decision and Plaintiff's 2008 hearing, Plaintiff received additional medical care that showed "very poor sleep quality" due to sleep apnea disease [AR 932], "significant crepitus [grating, cracking, or popping sounds] on extension or flexion of the left knee" [AR 950], osteoarthritis in both knees [AR 950], and depression [AR 948].  In March 2008, Plaintiff's treating physician reviewed Plaintiff's prior medical records in conjunction with a February 2008 physical exam and concluded Plaintiff "remain[ed] largely disabled secondary to severe low back pain, chronic fibromyalgia, sleep apnea, cardiovascular disease, and depression."  [AR 951].  Six days after the March 18, 2008, hearing, Plaintiff requested the ALJ include this additional evidence in his determination of disability.  The ALJ declined to allow a *de novo* hearing—citing the limited issue noted in Judge Krieger's order of remand, as well as Plaintiff's counsel's failure to make the request prior to the date of the hearing—but nonetheless reviewed the additional records and found them insufficient to establish any additional severe impairments other than those found in the July 15, 2005, Order.  [AR 849].  This Court has reviewed the records submitted and—in light of Judge Krieger's previous order finding the July 15, 2005, Order to be correct in all aspects but those noted above—agrees with the ALJ that a finding of no additional severe impairments is supported by substantial evidence.

## IV.  CONCLUSION

Once a claimant has demonstrated—as Plaintiff has here—that he cannot perform his past work because of his disability, the burden shifts to the Commissioner to show that the claimant retains the residual functional capacity to do other work that exists in significant

numbers in the national or regional economy. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). The Commissioner—despite three separate hearings and subsequent decisions spanning more than seven years—has thus far failed to meet this burden. Accordingly, the ALJ's April 26, 2008, Order must be reversed.

"When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Some of the relevant factors the Court considers when exercising this discretion include the length of time the matter has been pending and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose or would merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

After seven years, three administrative hearings accompanied by three ALJ decisions, and two remands, a review of all the evidence in this case shows only that Plaintiff could perform the job of flower picker—a relatively scarce job that requires frequent stooping, kneeling, and crouching. [AR 977]. In light of Plaintiff's inability to work in a job with production quotas, as well as Plaintiff's medically-determined and worsening osteoarthritis in both knees and fibromyalgia [AR 819, 948–50], I am skeptical whether he could hold this job for a significant amount of time. *See Winfrey*, 92 F.3d at 1025–26. My skepticism is bolstered by the VE's testimony: "No, there's no production quota there [in the job of flower picker]. They're expected just to pick the flowers and bring them in. If they are working too slow in the employer's opinion they will terminate them. . . . If the employer perceives, thinks that they are not working hard enough or fast enough they will terminate them." [AR 995].

Although Judge Krieger felt remand for further administrative proceedings was the proper outcome in 2007, the ALJ on remand declined to follow Judge Krieger's instructions—even though those instructions set forth the proper legal standard for proceeding in Plaintiff's case. While it would have been preferable for the ALJ to have followed Judge Krieger's instructions and made appropriate factual findings, the Commissioner "is not entitled to adjudicate a case 'ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993). Under the circumstances of this case, therefore, I conclude that remand for additional factfinding and a correct application of the law would serve no useful purpose.

Accordingly, the ALJ's April 26, 2008, Order is REVERSED and this case is REMANDED to the Commissioner with instructions to remand to the Administrative Law Judge for an immediate reward of benefits beginning June 18, 2001.

Dated: September __15__, 2009.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge